UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WENDY C.,[1] | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-8347 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMDORANDUM OPINION AND ORDER**

Plaintiff Wendy C. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"), 42 U.S.C. §§ 416(i), 423, and Supplemental Security Income ("SSI"), 42 U.S.C. §§ 1381a, 1382c. Wendy, by counsel, has filed a motion for summary judgment asking the Court to reverse or remand the Administrative Law Judge's ("ALJ") decision and the Commissioner has filed a cross-motion for summary judgment in response. After careful review of the record and the parties' respective arguments, the Court concludes that substantial evidence supports the ALJ's residual functional capacity assessment, the ALJ properly assessed Wendy's credibility, and the ALJ reasonably assessed the medical opinions that Wendy specifically challenges. The Court therefore denies Wendy's motion for summary and grants the Commissioner's motion.

**Background**

Wendy filed applications for benefits on March 10, 2014, alleging a disability onset date of

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

January 10, 2014. Wendy was 36-years-old when she filed her applications. At the time she stopped working, Wendy was a medical assistant in a physician's group. Her applications for benefits were denied initially and upon reconsideration. Wendy then requested a hearing before an ALJ, which was held on October 3, 2016. At the hearing, a medical expert and vocation expert testified, along with Wendy. On February 24, 2017, the ALJ issued a decision denying Wendy's applications. The Appeals Council then declined review, leaving the ALJ's February 2017 decision as the Commissioner's final decision reviewable by this Court under 42 U.S.C. § 405(g).[2]

**Judicial Standard of Review**

Courts uphold an ALJ's disability determination if the ALJ uses the correct legal standards, the decision is supported by substantial evidence, and the ALJ builds an accurate and a logical bridge from the evidence to the conclusion. *Jeske v. Saul,* 955 F.3d 583, 587 (7th Cir. 2020); 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (citation omitted). A federal court's review of an ALJ's decision is deferential, which means that courts do not reweigh the evidence or substitute their judgment for that of the ALJ. *Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

**Disability Determination Standard**

A person is disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[2] The Court notes that the decision in this matter has been delayed due, in part, to a partial government shutdown and the COVID-19 public emergency, at which time this matter was inadvertently overlooked.

continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has set forth a five-step sequential evaluation for determining whether an individual is disabled. *Krell v. Saul*, 931 F.3d 582, 584 (7th Cir. 2019). This evaluation considers whether (1) the claimant has engage in substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's severe impairment or combination of impairments is one that the Commissioner considers conclusively disabling as enumerated in the regulations; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform past relevant work; and (5) the claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520.

**ALJ's Disability Determination**

Here, at step one, the ALJ found that Wendy had not engaged in substantial gainful activity since the alleged onset date of January 10, 2014. At step two, the ALJ determined Wendy had the severe impairments of anxiety disorder, post-traumatic stress disorder, depressive disorder, bipolar disorder, seizure disorder, fibromyalgia, obesity, and degenerative disc disease of the cervical spine (status post discectomy and fusion). The ALJ also determined that Wendy suffered from non-severe obstructive sleep apnea, foot problems, and a rotator cuff tear. At step three, the ALJ concluded that Wendy did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. 20 C.F.R. § 404.1594(f)(2).

At step four, the ALJ decided that Wendy has the residual functional capacity ("RFC") to perform light work except "she can never climb ladders, ropes or scaffolds; can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; can only occasionally be exposed to unprotected heights and dangerous heavy moving machinery; and can never perform commercial driving." The ALJ further concluded that Wendy "is limited to understanding, remembering and

carrying out no more than simple, routine and repetitive tasks" and that she "is not able to meet hourly production goals, but is able to meet end-of-day goals." In addition, the ALJ stated that Wendy "can use judgment but is limited to simple work-related decisions" and is "also limited to work involving no more than brief and superficial interaction with coworkers and the public." As such, the ALJ concluded that Wendy was unable to perform her past relevant work. At step five, considering Wendy's age, education, work experience, and RFC, the ALJ concluded there are jobs in significant numbers in the national economy Wendy can perform that have light exertional levels, including cleaner-housekeeper, mailroom clerk, and dishwasher.

**Analysis**

Wendy contends that the ALJ erred for several reasons, including (1) the limitations included in her RFC assessment cannot be reconciled with her exertional and non-exertional deficits, (2) the ALJ improperly rejected her subjective statements about her symptoms and limitations, and (3) there is no logical support for the ALJ's assessment of certain medical opinions.

*RFC Limitations*

First, Wendy argues that the ALJ's RFC assessment made at step four failed to incorporate all of her limitations supported by the medical record, including limitations in concentration, persistence, or pace. *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019). Specifically, Wendy asserts that the ALJ failed to take into consideration her limitations arising from her fibromyalgia, her obesity (BMI 43) in tandem with her left foot impairment, and her seizures. Also, Wendy takes issue with the ALJ's failure to sufficiently take into account her limitations as to concentration, persistence, or pace.

As to Wendy's fibromyalgia, the ALJ considered the September 2014 physical examination by Dr. Ximena Chavez, M.D., in which the physician noted that a neurologist had diagnosed Wendy

4

as having fibromyalgia. Dr. Chavez's examination reflected that Wendy was moving all extremities freely, her reflexes were intact, and that there was "no obvious swelling tenderness, misalignment or other abnormalities" except for "tenderness on palpation of her paracervical muscles, paralumbar muscles, arms, and legs." After reviewing this report, the ALJ concluded that Dr. Chavez's September 2014 evaluation was "essentially benign" as to Wendy's fibromyalgia, but the ALJ gave Wendy the benefit of the doubt concluding that "her fibromyalgia-like symptoms have contributed to the RFC limitations."

Wendy relies on this same September 2014 examination by Dr. Chavez to support her argument that "the ALJ practically dismissed the existence of the impairment." Wendy argues that the September 2014 evaluation listed many symptoms that the ALJ ignored, including chronic fatigue, muscle pain and multi-joint pain, unrefreshing sleep, post-exertional malaise, joint swelling, widespread pain for three or more months, pain in eleven pressure points, stiffness, tension headaches, sleep disturbance, memory loss, and inability to ambulate effectively. Dr. Chavez, however, did not observe or conclude that Wendy had any of these symptoms. In other words, the September 2014 examination is silent as to these other symptoms that Wendy now lists. Because the ALJ did not ignore the symptoms of which the ALJ was aware, and adequately included them in the RFC determination, the ALJ did not err in this respect.

Next, Wendy asserts that the ALJ failed to properly take into account her obesity and left foot impairment when concluding she could work at a light exertional level. Wendy's counsel, however, fails to provide any rationale or support for how the ALJ erred. Despite the lack of argument, for the sake of completeness, the Court reviews the ALJ's decision in this regard. In the decision, the ALJ sufficiently discussed Wendy's left foot problems and surgeries in detail noting that Wendy continued to work at her job as a medical assistant that required time on her feet until

her onset date. The ALJ further considered the treatment notes after the second foot surgery, which did not show any significantly abnormal gate or foot-related problems. As to Wendy's obesity, the ALJ recognized that it contributed to Wendy's musculoskeletal pain and exertional and postural limitations, but that the absence of more serious musculoskeletal findings suggested Wendy's obesity had yet to cause major deterioration. In sum, the ALJ sufficiently considered Wendy's obesity and foot problems when evaluating her work-related impairments despite counsel's conclusory argument to the contrary.

Furthermore, Wendy challenges the ALJ's conclusion in relation to her seizure disorder, which the ALJ found to be a severe impairment. In the decision, the ALJ noted Wendy had normal EEG (electrophysiological) results in both February 2011 and August 2013, but that an EEG in July 2011 showed rhythmic sharp and slow activity over the frontal regions waxing and waning during sleep. Also, the ALJ noted that in July 2014, there was a partial episode involving the frontal lobe. The ALJ, however, reasoned that there was no medical evidence of ongoing or consistent seizure activity. Therefore, the ALJ concluded that the seizure disorder was mild, well-controlled, or both and that the RFC limitations included restrictions regarding dangerous activities should Wendy experience a seizure at work.

Wendy argues the ALJ's RFC limitations do not eliminate the likelihood that she will be off task at work in relation to her seizure disorder. Wendy, however, does not suggest how the medical record demonstrates that greater functional limitations should be included in her RFC assessment. Because Wendy has not explained what work restrictions would address her limitations in relation to her seizure disorder, any alleged error is harmless. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Next, Wendy contends that the ALJ ignored the opinion of testifying medical expert Dr.

Allen Heinemann where he stated that Wendy would need to take frequent, unscheduled breaks. Wendy mischaracterizes Dr. Heineman's testimony, in which he stated that Wendy could perform simple tasks for two-hour periods without the need for a break, not that she would need to take frequent, unscheduled breaks. In fact, the ALJ relied recognized Dr. Heineman's testimony concerning Wendy's need for fifteen minute breaks every two hours in the February 2017 decision.

*Credibility Determinations*

Wendy also challenges the ALJ's credibility determinations in relation to her subjective statements about her symptoms and limitations. Federal courts give an ALJ's credibility findings special deference unless they are patently wrong. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Here, Wendy argues the ALJ improperly expressed skepticism about her reason for quitting her job. In the February 2017 decision, the ALJ noted Wendy had reported to Dr. Julie Kogan, M.D., a consultative examiner, that she stopped working in January 2014 because of a conflict at work. The ALJ concluded that this statement "clearly suggest[ed] it was not her physical condition (and not necessarily a mental impairment either) that was the reason she stopped working." Indeed, Wendy similarly testified at the October 2016 hearing that she quit work based on an incident at work that made her cry and call her psychiatrist. Because Wendy's testimony is consistent with her statement to Dr. Kogan that a conflict at work was her reason for leaving work, the ALJ's weighing of the evidence, although not flawless, was not patently wrong. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). Moreover, the ALJ largely credited Wendy's mental complaints and symptoms as reflected in significant limitations included in the RFC, and thus any alleged "skepticism" was harmless error, especially because counsel does not explain how the ALJ's discussion affected the outcome of her

RFC or other aspects of her disability claims. *See Penrod v. Berryhill,* 900 F.3d 474, 478 (7th Cir. 2018) (per curiam).

Further, Wendy maintains that the ALJ dismissed her psychiatric complaints because she had never been hospitalized. Wendy misstates the ALJ's findings and ignores the ALJ's reliance on Wendy's mental complaints and symptoms in fashioning the RFC. In the decision, the ALJ noted that that Wendy has never been hospitalized, but did not dismiss Wendy's complaints about her mental condition based on the lack of hospitalization. Rather, the ALJ largely credited the medical evidence of Wendy's mental condition and her own self-reported symptoms when limiting Wendy to simple work with only incidental contact with the public and co-workers.

Next, Wendy asserts that the ALJ made an unsubstantiated leap by not properly considering her daily activities and suggesting that activities such as showering, eating, and watching television would translate into her ability to sustain full-time work. The Court disagrees with Wendy's characterization of the ALJ's decision. The ALJ did not connect Wendy's daily activities to her ability to sustain full-time work, but instead, considered Wendy's daily activities as required under 20 C.F.R. § 404.1529(c)(3)(i), along with all of the evidence in the record when evaluating the severity of Wendy's symptoms. In sum, it is "entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of [the claimant's] impairments was credible.'" *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citation omitted).

As to Wendy's last argument about the ALJ's credibility determinations, which concerned her boyfriend's credibility, the ALJ's credibility reasoning that the boyfriend crossed out certain aspects on the function report to be consistent with Wendy's report was not patently wrong because this reasoning had support in the record.

*Medical Opinions*

Next, Wendy takes issue with the ALJ's assessment of her treating psychiatrist's opinion. For claims filed before March 2017, a treating physician's opinion is entitled to controlling weight if it is consistent with the record. *Burmester,* 920 F.3d at 512. As such, an ALJ cannot reject a treating physician's opinion without a sound explanation. *Hardy v. Berryhill,* 908 F.3d 309, 312 (7th Cir. 2018); 20 C.F.R. § 404.1527(c)(2).

Wendy submits that Dr. Serge Sorokin was her treating psychiatrist. She argues that the ALJ criticized Dr. Sorokin's October 2014 narrative synopsis of her mental health issues because Dr. Sorokin did not articulate any work restrictions or offer an opinion about Wendy's ability to work in general. The ALJ did not reject his narrative, but noted that Dr. Sorokin simply did not give an opinion on work restrictions.

Further, Wendy asserts that the ALJ's conclusion regarding contact with a supervisor was flawed. In making this argument, Wendy points to the testifying medical expert Dr. Heinemann's opinion that Wendy could interact with a supervisor. Specifically, at the October 2016 hearing, Wendy's counsel asked Dr. Heinemann why he thought Wendy's interactions with her co-workers and the public should be limited, but that there were no limitations on interactions with a supervisor. Dr. Heinemann explained that interactions with a supervisor would be less frequent than co-workers and that if the supervisor presented criticisms to Wendy in a factual manner, and not emotionally, Wendy would be able to deal with a supervisor's feedback. As such, the ALJ's conclusion that Wendy could interact with a supervisor is reasonable and supported by substantial evidence in the record.

Wendy next argues that the ALJ assigned significant weight to Dr. Kogan's physical RFC assessment, even though Dr. Kogan's assessment was inconsistent with the ALJ's own findings.

Wendy misunderstands the ALJ's discussion related to Dr. Kogan's report. The ALJ relied on Dr. Kogan's observations during Wendy's examination noting that Dr. Kogan thought that Wendy had no difficulties with respect to any physical activities. Yet, the ALJ qualified this statement that Dr. Kogan's opinion "did not appear to be an opinion in the sense of estimating what the claimant's capacities would be in a work setting." And, as Wendy acknowledges, the ALJ did conclude that Wendy had difficulties as to certain physical activities – despite Dr. Kogan's report to the contrary. The ALJ therefore did not err in this respect.

The remainder of Wendy's arguments concerning the medical opinions and the ALJ's reliance on them are conclusory and unsubstantiated. Counsel merely asserts that the "ALJ's assignment of weight to the opinions of various non-examining state agency consultants is completely arbitrary," but does not explain which medical opinions and the resultant ALJ conclusions she is challenging. Wendy, who is represented by counsel, has waived these unsubstantiated arguments. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *see, e.g., Linda T. v. Saul*, Case No. 19 C 3950, 2020 WL 5210846, at *6 (N.D. Ill. Sept. 1, 2020) (Kim, J.).

**Conclusion**

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment [8] and grants the Commissioner's summary judgment motion [15]. The Court affirms the ALJ's decision. Civil case terminated.

IT IS SO ORDERED.

Date: 10/1/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge